UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ICPEP, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>SMC SPECIALTY FINANCE, LLC,<br>GARY S. RASKIN, and<br>ALASTAIR BURLINGHAM,<br><br>    Defendants. | Case No.: 1:24-cv-01819-JRS-KMB |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

Defendants Gary S. Raskin ("Raskin"), Alastair Burlingham ("Burlingham"), and SMC Specialty Finance, LLC ("SMC") (collectively, "Defendants"), for their Memorandum in Support of their Motion to Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, to Compel Arbitration, state as follows:

## I.
### INTRODUCTION

This is a retaliatory action brought by Plaintiff ICPEP, LLC ("ICPEP") against Defendants after Defendants already filed claims against the sole principal of ICPEP, Danny Chan, in the Superior Court of California (in a case which is being hotly litigated and remains pending). SMC and ICPEP are also parties to an ongoing arbitration proceeding in Los Angeles, California concerning the ***same transactions*** at issue in the Complaint in this lawsuit. ICPEP has elected to file ***counter-claims***

#2880948v2

in the arbitration against SMC and has already begun discovery. Indeed, ***all*** of the contracts between ICPEP and SMC contain ***mandatory*** arbitration and forum selection clauses specifying binding arbitration to take place in Los Angeles, California before JAMS.

ICPEP's Complaint in this case concedes that Defendants are all residents of California. Although the Complaint contains no allegations explaining why the courts of Indiana would have any basis for personal jurisdiction over the out-of-state Defendants, Defendants have nonetheless submitted declarations stating that Defendants have never conducted business in or even traveled to Indiana. Defendants' only connection to Indiana is that SMC entered into several agreements with ICPEP, ***a Wyoming company***, whose principal (Danny Chan) just happens to reside in Indiana. But as discussed above, each of these contracts contains both arbitration and mandatory forum selection clauses specifying that Los Angeles, California would be the forum for any disputes. And even if these clauses were not in the contracts, merely entering into a contract with a resident of the forum state is insufficient to create personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

This case should have never been filed by ICPEP. There is no basis for the courts of Indiana to exercise personal jurisdiction over any of the Defendants. And even if there was somehow a basis for personal jurisdiction over the Defendants, the case should still be dismissed because of the mandatory arbitration clauses specifying that disputes are to be resolved by JAMS in Los Angeles, California.

# II.
## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Defendants and Their Agreements with ICPEP**

SMC is an established media finance company formed, located, and operating out of California. (Declaration of Gary Raskin ("Raskin Decl.") at ¶ 3.) A significant portion of SMC's business consists of making loans to "Hollywood" film and television projects, producers, and production companies who use the loan proceeds to finance a portion of the production costs for feature motion pictures and television shows they produce. (*Id.*)

SMC is jointly owned and managed by Raskin and Burlingham. As the Complaint concedes, both Raskin[1] and Burlingham are residents of California. (Compl. ¶¶ 4–5.) Defendants have not conducted business in Indiana nor even visited Indiana. (Raskin Decl. ¶ 4; Declaration of Alastair Burlingham ("Burlingham Decl.") ¶ 4.)

SMC uses various capital sources to fund its loans. (Raskin Decl. ¶ 5.) Plaintiff ICPEP—a company SMC believes is owned by Chan—has participated in several SMC loans over the years by providing funding for the loans. (*Id.*) Plaintiff's Complaint contains allegations concerning four separate SMC loans in which ICPEP participated. (*See, e.g.,* Compl. ¶ 79.) Those SMC loans were for three specific film projects (*Hail Mary*, *The Present*, and *Freelance*), and one multi-film credit facility for a company entitled Prosaic Holdings (UK) Limited. (*Id.*)

---

[1] In addition to his role at SMC, he is a California-licensed attorney and the Managing Partner of Raskin Gorham Anderson Law, a boutique law firm based in Los Angeles, California.

#2880948v2                                                                                                                          2880948

Importantly, each of these funding agreements contains mandatory arbitration clauses stating as follows:

> <u>Binding Arbitration</u>: Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Los Angeles County, California before one arbitrator. The arbitration shall be administered by JAMS pursuant to JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction.

(Raskin Decl. ¶ 6, Ex. A at ¶ 6; *id.* ¶ 7, Ex. B at ¶ 5; *id.* ¶ 9, Ex. D at ¶ 6; *id.* ¶ 10, Ex. E at ¶ 6.)

The agreements also contain the following choice of law clause:

> This Agreement and all other matters arising out of or relating to this Agreement shall be governed by the laws of the State of California without reference or deference to principles of California conflicts law.

(*Id.* ¶ 6, Ex. A at ¶ 7; *id.* ¶ 7, Ex. B at ¶ 6; *id.* ¶ 9, Ex. D at ¶ 7; *id.* ¶ 10, Ex. E at ¶ 7.)

**B.   Related Proceedings Pending in California**

The following section provides background for the Court as to the lawsuits and arbitration proceedings currently pending in California involving Defendants, ICPEP, and ICPEP's principal, Danny Chan.

In early 2024, ICPEP and Chan chose to engage in a course of tortious misconduct consisting of a conspiracy among ICPEP/Chan and the borrowers/guarantors—Sparkhouse Media, LLC, Talal Al-Abbar and Karina Miller (the "Sparkhouse Parties")—on a loan partially funded by ICPEP that was made in connection with the motion picture entitled *Hail Mary* (the "Hail Mary Loan"), and

on which the Sparkhouse Parties had defaulted. (*See* Raskin Decl. ¶ 12, Ex. F.) Specifically, ICPEP / Chan and the Sparkhouse Parties attempted to extort money from SMC (and Raskin and Burlingham as its principals), circumvent SMC's collection of the Hail Mary Loan from Sparkhouse (including enforcement of Al-Abbar and Miller's personal guarantees), and misappropriate the collateral pledged for the Hail Mary Loan. (*Id*.) The conspiracy thus far has played out through a campaign of physical, verbal, and written threats to destroy SMC's business, to falsely report SMC's principals to various governmental organizations, and to physically harm the principals—unless SMC agreed not only to forgive the Hail Mary Loan but further pay money to ICPEP and the others. (*Id*.)

As a result of ICPEP / Chan's and the Sparkhouse Parties' conspiracy to extort SMC, Raskin, and Burlingham (collectively, the "SMC Parties"), on June 14, 2024, the SMC Parties filed an action for (i) extortion; (ii) intentional infliction of emotional distress; and (iii) unfair competition in Los Angeles Superior Court against Chan and the Sparkhouse Parties. (*Id*.) Chan appeared in that action on July 17, 2024, has conducted discovery, and filed a demurrer to SMC's First Amended Complaint. (*Id*.)

On September 3, 2024, SMC filed an arbitration proceeding against ICPEP for, among other things, declaratory relief in connection with the funding agreements for *Freelance*, *Hail Mary*, *Present*, and the Prosaic loans (collectively, the "Funding Agreements").[2] (Raskin Decl. ¶ 14, Ex. H.) Pursuant to the mandatory arbitration

---

[2] The SMC Parties also filed an arbitration proceeding before JAMS against the Sparkhouse Parties for their failure to pay the Hail Mary Loan and to enforce the underlying personal guarantees. (*Id*. ¶ 13, Ex. G.) Pursuant to the mandatory arbitration provision in the loan documents, the proceeding was filed with JAMS in Los Angeles, California and is currently pending. (*Id*.)

provisions in each of those agreements, SMC filed the proceeding with JAMS in Los Angeles, California. (*Id.*) ICPEP appeared in that proceeding on September 11, 2024, filed counter-claims and has served discovery on SMC. (Raskin Decl. ¶ 14, Exs. H-J.)

**C.    The Present Action**

ICPEP filed the present action in Indiana Superior Court on August 23, 2024. Because complete diversity exists between the parties and the amount in controversy exceeds $75,000, on October 11, 2024, Defendants removed this action to the Southern District of Indiana. (Dkt. No. 1.)

## III.
### ALLEGATIONS OF THE COMPLAINT

In the present action, ICPEP asserts five claims based on the Funding Agreements. Although each of the claims is without any merit whatsoever, as discussed herein, the venue to determine the merits is arbitration in Los Angeles, California, which the parties expressly agreed.

**A.    ICPEP's Claims**

First, ICPEP asserts claims for (i) an account stated; (ii) fraud; and (iii) securities fraud in connection with the Funding Agreement for *The Present* (the "Present Funding Agreement.") (Compl. ¶¶ 9–61.) In support of these claims, ICPEP alleges that in or about May 1, 2022, it funded $500,000 based on Plaintiffs' representations that ICPEP would be repaid upon sale of *The Present*, and that the loan was in the first priority collateralized position on the movie. (*Id.* ¶¶ 12–13.) ICPEP further alleges that the movie has now been sold but ICPEP has not been

repaid and the loan is not in a first priority position. (*Id.* ¶ 20.) ICPEP therefore seeks an account stated and damages for fraud and securities fraud. (*Id.* ¶¶ 9–61.) While ICPEP alleges that it did not sign the Present Funding Agreement (which is contrary to the evidence), it acknowledges that there was a written agreement for this funding (i.e., the Present Funding Agreement) that was signed by SMC.[3] (*Id.* ¶ 19.)

ICPEP also asserts a claim for an account stated in connection with its Funding Agreement for the Prosaic loan facility (the "Prosaic Funding Agreement"). (*Id.* ¶¶ 62–75.) ICPEP alleges that, pursuant to the Prosaic Funding Agreement, ICPEP provided certain funding in connection with the Prosaic loan facility. (*Id.* ¶ 69.) ICPEP further alleges that the maturity date of the loan came and went without repayment to ICPEP. (*Id.* ¶ 71.) ICPEP therefore asserts an account stated in connection with the Prosaic Funding Agreement. (*Id.* ¶¶ 62–75.)

Lastly, ICPEP asserts an abuse of process claim in connection with all four of the Funding Agreements. (*Id.* ¶¶ 78–79.) In particular, ICPEP alleges an "abuse of process" based on, among other things, ICPEP's "Unpaid Participations" in all four of the Funding Agreements:

> On four (4) of these loan participations, ICPEP has not been repaid for principal balances totaling $2,606,397.89, plus interest. These loan participations concern loans made in connection with the following feature films: *Freelance*, a $35 million production feature film starring John Cena, for

---

[3] While the allegations of the Complaint misleadingly suggest that ICPEP had not seen the written agreement until months after providing the funding, as discussed below the record makes clear that ICPEP (through Chan) had not only previously seen the Present Funding Agreement (which was provided to ICPEP prior to its funding and was based on the same form funding agreement the parties had agreed to with every prior funding) but had also assented to its terms regardless of whether it countersigned. SMC did sign and email the funding agreement to ICPEP and the evidence strongly suggests that ICPEP also signed it but just did not send its signature to SMC. See Section V.B, below.

> which ICPEP funded $1,070,772.00 (100% of the movie loan made by SMC, an "AGC" movie project; *Prosaic B*, a movie project for which ICPEP funded $235,625.89 to the "pool of movies" loan made by SMC, as alleged above, $30,536.76 of which is at issue in Count III above; *Hail Mary*, starring Jack Huston, for which ICPEP funded $800,000.00 of the $2,350,000.00 movie loan made by SMC; and $500,000.00, for *The Present*, as alleged above (an "AGC" movie project), collectively, the "ICPEP Unpaid Participations").

(*Id.* ¶ 79.) In support of this claim, ICPEP further alleges various "irregularities" and "misrepresentations" related to ICPEP's funding of *Freelance* and Prosaic, pursuant to those respective Funding Agreements (the "Freelance Funding Agreement" and "Prosaic Funding Agreement"). (*Id.* ¶ 82.E–H).

## B.   ICPEP's Jurisdictional Allegations

In its Complaint, ICPEP sets forth no jurisdictional allegations. On the contrary, ICPEP concedes that each of the Defendants are California residents. (Compl. ¶¶ 3–5.)

The only allegations relating whatsoever to Indiana are (i) the allegation that ICPEP's principal, Chan, lives in Indiana (*id.* ¶ 2.); (ii) the allegation ICPEP does business in Indiana (*id.* ¶ 1); and the conclusory, vague allegation that "SMC solicited ICPEP in Hamilton County, Indiana" to participate in the certain loans underlying the Funding Agreements (*id.* ¶¶ 7, 66.)

ICPEP does not allege that any of the Defendants ever did business in Indiana, that they ever conducted any activity in Indiana, or that they ever visited Indiana.

## IV.
### THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

**A.  Relevant Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim when personal jurisdiction is lacking, and once a defendant moves to dismiss under this Rule, the plaintiff bears the burden of establishing personal jurisdiction exists. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). *See also John Crane, Inc. v. Shein L. Ctr., Ltd.,* 891 F.3d 692, 695 (7th Cir. 2018) ("When challenged, the plaintiff has the burden of proving personal jurisdiction.")

"Courts recognize two types of personal jurisdiction: general and specific." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697–98 (7th Cir. 2015). "General jurisdiction is 'all-purpose'; it exists only 'when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotation marks and alteration omitted)). "Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum." *Kipp*, 783 F.3d at 698.

**B.  There Is No General Jurisdiction Over Any of the Defendants**

A defendant is subject to general jurisdiction when it has "continuous and systematic general business contacts" with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). This is a "demanding standard that requires the defendant to have such extensive contacts

with the state that it can be treated as present in the state for essentially all purposes." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425–26 (7th Cir. 2010).

As discussed above, Plaintiff concedes that the Defendants are all California residents and has set forth no allegations that would suggest a basis for general jurisdiction in Indiana over the Defendants. Defendants do not conduct business in Indiana and do not visit the state. Accordingly, there is no basis for general jurisdiction over any of the Defendants.

**C.     There Is No Specific Jurisdiction Over Any of the Defendants**

A court may not exercise specific jurisdiction "over a nonconsenting, out-of-state defendant unless the defendant has 'certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In conducting an analysis of minimum contacts, courts must determine "whether (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) (internal citations and quotation marks omitted).

Here, Defendants have not purposefully directed any activities at Indiana nor have they purposefully availed themselves of the privilege of conducting business in Indiana. The Defendants' only relevant connection to Indiana is that Chan is currently a resident of Indiana, and Chan is the principal of ICPEP (which is a

Wyoming company), and SMC entered into the Funding Agreements with ICPEP. However, each of these agreements mandates the forum for any disputes as binding arbitration before JAMS in Los Angeles, California.

Moreover, even without the forum clauses, "'a contract with a forum resident is not enough, standing alone, to establish jurisdiction in that forum.'" *Prolific, LLC v. Freedom Cent. Holdings, Inc.*, No. 121CV02725SEBTAB, 2022 WL 2763234, at *2 (S.D. Ind. July 14, 2022) (quoting *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 880 (7th Cir. 2019)); "If the question is whether an individual's contract with an out-of-state party ***alone*** can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (emphasis in original); *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").

Defendants did not negotiate the Funding Agreements in Indiana. (Raskin Decl. ¶ 11; Burlingham Decl. ¶ 5.) Defendants did not solicit Danny Chan or ICPEP, LLC. (*Id.*) Chan first reached out to Defendnats in Los Angeles, California and Defendants' first meeting with Mr. Chan took place at Defendants' offices in Los Angeles, California in 2019. (*Id.*)

Defendants simply have not directed activities at Indiana nor availed themselves of any benefits of conducting business in Indiana. Chan could have resided in any other state and it would have had no impact on the Defendants' business whatsoever. Indeed, in the parties' relationship, it is ICPEP and Chan who

have directed activities toward Defendants' home state of California and purposefully availed themselves of the privilege of conducting business in California. Eager to be involved in the film industry based out of California, it is ICPEP that sought to participate in SMC's loans in exchange for meeting Hollywood stars and receiving executive producer credit on motion pictures.

Accordingly, there is no basis to assert specific jurisdiction over any of the Defendants.

## V.
### ALTERNATIVELY, THIS COURT SHOULD COMPEL ARBITRATION

This case should be dismissed in its entirety pursuant to Rule 12(b)(2) for lack of personal jurisdiction. However, even if the Court somehow did have jurisdiction over the Defendants, this case should still be compelled to arbitration in light of the mandatory arbitration provisions in the Funding Agreements at issue.

**A.   Relevant Legal Standard**

The party seeking to compel arbitration bears the burden of demonstrating a valid agreement to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). However, "[c]ourts must grant a motion to compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement to arbitrate, and (3) a refusal to arbitrate." *Walton v. Uprova Credit LLC*, No. 1:23-CV-00520-SEB-TAB, 2024 WL 1241836, at *3 (S.D. Ind. Mar. 21, 2024) (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)).

Furthermore, parties may manifest such clear and unmistakable intent "to have an arbitrator decide not only the merits of a particular dispute but also gateway

questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (internal quotation marks and citations omitted).

B.     **Each of the Funding Agreements Contain a Mandatory Arbitration Provision**

As discussed above, ICPEP has asserted five claims in this action each relating to one more of the Funding Agreements. And each of the Funding Agreements contains the following mandatory arbitration provision:

> Binding Arbitration: Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Los Angeles County, California before one arbitrator. The arbitration shall be administered by JAMS pursuant to JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction.

(Raskin Decl. ¶ 6, Ex. A at ¶ 6; *id.* ¶ 7, Ex. B at ¶ 5; *id.* ¶ 9, Ex. D at ¶ 6; *id.* ¶ 10, Ex. E at ¶ 6.)

ICPEP does not dispute—and in fact confirms in its Complaint—that the parties entered into a binding agreement to arbitrate with respect to the Hail Mary Funding Agreement, the Freelance Funding Agreement, and the Prosaic Funding Agreement. (*See* Compl. ¶ 89.E: "Three (3) of the loan participations identified above (but not *The Present* loan as alleged above) were subject to written Funding

Agreements between SMC and ICPEP.  **These Funding Agreements, drafted by RASKIN, all contain mandatory arbitration provisions**." (emphasis added).)

As for the Present Funding Agreement, ICPEP suggests that because the parties are not in possession of a countersigned copy of the agreement, there is no enforceable written agreement for *The Present*.  (Compl. ¶ 19.)  First, in an email dated September 29, 2023, Chan himself wrote to Raskin confirming that he had, or had at least intended, to countersign the Present Funding Agreement on behalf of ICPEP: "Hi Gary I do not have ***a fully executed*** doc for The Present funding agreement. Can you send me a copy? Thanks."  (Raskin Decl. ¶ 8, Ex. C (emphasis added).)  At the very least, this email confirms that ICPEP had agreed to the terms of the Present Funding Agreement—including the arbitration provision—regardless of whether Chan signed it (but, he must have since he was asking SMC to send its signature so it was "fully executed").  Upon receiving this request, Raskin had the Present Funding Agreement signed by SMC and emailed that to Chan.

In addition, by that point, ICPEP had already signed the form of the Present Funding Agreement in connection with several other SMC loans, and continued to do so in in connection with other SMC loans.  (*Id.* ¶¶ 6, 9, 10, Exs. A, D, E.)  ICPEP's assent to the Present Funding Agreement, regardless of whether it formally countersigned, is sufficient for formation of a contract and to enforce the arbitration provision.[4]  *See, e.g., Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002)

---

[4] To determine whether the parties entered into an enforceable arbitration contract, "a federal court should look to the state law that ordinarily governs the formation of contracts." *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 367 (7th Cir.1999) (internal quotation mark and citation omitted). Indiana law makes clear that a written, unsigned contract is enforceable if the parties mutually assent

(enforcing arbitration provision against defendant who did not sign arbitration agreement because "[a]lthough § 3 of the FAA requires arbitration agreements to be written, it does not require them to be signed").

Importantly, to the extent there is any question as to the enforceability of the arbitration provisions or the arbitrability of any of claim, those are questions to be decided to the arbitrator as the parties clearly delegated that authority to the arbitrator: "Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, ***enforcement, interpretation or validity*** thereof, including the determination of ***the scope or applicability of this agreement*** to arbitrate, shall be determined by arbitration in Los Angeles County, California before one arbitrator." (Emphases added.) *See e.g., Walton*, 2024 WL 1241836, at *5 (S.D. Ind. Mar. 21, 2024) (Holding that arbitration provision that subjects "all disputes and claims …, including all claims regarding [its] validity, scope, or enforceability" to "confidential binding individual arbitration" required the arbitrator to decide the scope of arbitrability).

## C. Each of the Asserted Claims Arises Out of or Relates to one or more of the Funding Agreements

The Seventh Circuit has held that "law and public policy strongly favor arbitration, and that the party seeking arbitration is entitled to the benefit of the doubt. Where the arbitration clause is broad, we presume arbitrability of disputes.

---

to its terms. *See, e.g., Nationwide Ins. Co. v. Heck,* 873 N.E.2d 190, 196 (Ind. Ct. App. 2007) (validity of a contract is not dependent upon the signature of the parties" where parties assent to terms by "express[ing] acts which manifest acceptance"); *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 366 (Ind. Ct. App. 2008) ("the validity of a contract is not dependent upon the signature of the parties").

And where any ambiguity as to the scope of the clause exists, we will construe it in favor of the party seeking arbitration. Ultimately, we will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Bhd. of Elec. Workers Loc. 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014) (cleaned up and internal citations omitted).

Courts have said that "[t]he phrases 'arising out of' and 'related to' both have a very broad scope. Indeed, several courts have held that the term 'relating to' has an even broader scope than the term 'arising out of.'" *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 854 (N.D. Ill. 2007). Thus, the arbitration clauses in the Funding Agreements are broad in scope and there is a presumption that the disputes at issue are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Bhd. of Elec. Workers Loc. 2150*, 762 F.3d at 594.

Indeed, as for the first three claims for an account stated, fraud, and securities fraud, the Complaint makes clear they all relate to alleged misconduct in connection with ICPEP's participation in the funding of the loan for *The Present*. (Compl. ¶¶ 9–61.) While ICPEP alleges that it did not sign the Present Funding Agreement, it acknowledges the existence of the agreement (*id.* ¶ 19) and, as discussed above, the written record confirms that ICPEP did indeed agree to the written agreement.

These claims therefore fall within the scope of the arbitration provision of the Present Funding Agreement and are subject to arbitration.

As for the fourth claim for an account stated, it express asserts an account stated in connection with ICPEP's funding of the "Prosaic Loan Facility" which is the subject of the Prosaic Funding Agreement. (*Id.* ¶¶ 69–74.) While ICPEP asserts there is no written or signed Funding Agreement in connection with this funding, that is simply not true. (Raskin Decl. ¶ 10, Ex. E.) As a result, this claim is also subject to arbitration pursuant to the arbitration provision of the Prosaic Funding Agreement.

The fifth and last claim for "abuse of process" asserts various "irregularities" and "misrepresentations" in connection with the Freelance Funding Agreement and Prosaic Funding Agreement (Compl. ¶ 82.E–H), as well as "Unpaid Participations" under each of the Funding Agreements at issue (*id.* ¶¶ 79–80). Accordingly, this claim also arises out of or relates to the Funding Agreements, and therefore is subject to arbitration pursuant to the mandatory arbitration provisions therein.

Accordingly, in the event the Court does not dismiss this case for lack of personal jurisdiction, it should compel the claims to arbitration pursuant to the mandatory arbitration provisions of the Funding Agreements.

## VI.
### CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion and dismiss the Complaint or, in the alternative, compel all claims to arbitration.

| | |
|---|---|
| Date <u>October 18, 2024</u> | Respectfully submitted,<br><br>*/s/ Andrew F. Marquis*<br>Andrew F. Marquis \| Attorney No. 28666-49<br>amarquis@scopelitis.com<br>SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.<br>10 West Market Street, Suite 1400<br>Indianapolis, IN 46204<br>Telephone: 317-637-1777<br>Facsimile: 317-687-2414<br><br>*Attorney for Defendants, SMC Specialty Finance, LLC, Gary S. Raskin, and Alastair Burlingham* |

4867-1700-3755,