UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ICPEP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01819-JRS-KMB |
| | ) |
| SMC SPECIALTY FINANCE, LLC, GARY S. RASKIN, and ALASTAIR BURLINGHAM, | ) ) ) |
| | ) |
| Defendants. | ) |

**Order on Defendants' Motion to Dismiss or Compel Arbitration**

**I.   Introduction**

Plaintiff ICPEP, LLC ("ICPEP") alleges against Defendants SMC Specialty Finance, LLC ("SMC LLC"), Gary S. Raskin, and Alastair Burlingham (collectively, "SMC") claims for accounts stated, fraud under both the Indiana Crime Victims Relief Act and the Indiana Securities Act, and abuse of process. (ECF No. 1-2.) Now before the Court is SMC's Motion to Dismiss for lack of personal jurisdiction or, in the alternative, to compel arbitration. For the following reasons, the Court **transfers** the case to the Central District of California under 28 U.S.C. § 1631 and **denies** SMC's Motion to Dismiss or Compel Arbitration. (ECF No. 8.)

**II.   Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) requires dismissal if the Court lacks personal jurisdiction over SMC. Here, ICPEP "need only make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d

773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The Court resolves factual disputes in ICPEP's favor. *Id.* at 782.

The Court has personal jurisdiction over SMC only if Indiana courts would have jurisdiction over SMC. *See id.* at 779. Indiana's long-arm statute authorizes Indiana courts to "exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. Trial R. 4.4(A). Therefore, the Court need only analyze whether its exercise of jurisdiction over SMC would violate the Due Process Clause of the United States Constitution. *See Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014).

ICPEP alleges only specific personal jurisdiction. (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss ¶ 37, ECF No. 17.) Specific personal jurisdiction exists if SMC "purposely established 'minimum contacts' in [Indiana] . . . 'such that [SMC] should reasonably anticipate being haled into court []here.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (first quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Accordingly, the Court must assess "whether it is fundamentally fair to require [SMC] to submit to the jurisdiction of the [C]ourt *with respect to this litigation*." *Purdue*, 338 F.3d at 780 (emphasis in original) (citing *World-Wide Volkswagen*, 444 U.S. at 292; *Int'l Shoe*, 326 U.S. at 316–17). "Notably, it must be the activity of [SMC] that makes it amenable to jurisdiction, not the unilateral activity of [ICPEP] or some other entity." *Id.* (citing *Burger King*, 471 U.S. at 474; *World-Wide Volkswagen*, 444 U.S. at 298). Consequently, personal jurisdiction is

2

lacking where an in-state plaintiff is "in absolute control over where it would conduct [the relevant] activity, and it made this decision and conducted the activity unilaterally." *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596, 603 (7th Cir. 1979). Taken together, specific jurisdiction exists if SMC "purposefully avail[ed] itself of the privilege of conducting activities within [Indiana]." *Burger King*, 471 U.S. at 474–75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The "purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012). Here, ICPEP alleges both contract and tort claims.[1] In contract disputes, the Court must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. That said, minimum contacts are not present if a defendant's only contact with the forum state is conduct that impacts a plaintiff with connections to the forum state. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014). With respect to ICPEP's tort claims, "the inquiry focuses on whether the conduct underlying the claim[] was purposely directed at [Indiana]." *Felland*, 682 F.3d at 674 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)).

---

[1] The Parties' arguments do not address personal jurisdiction separately for the contract and tort claims. The Court follows their lead, *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision . . ."), but notes that the outcome would be the same had the parties separately addressed the contract and tort claims.

3

### III. Background

ICPEP is a Wyoming LLC that has been registered to do business in Indiana since August 2021. (Compl. ¶ 1, ECF No. 1-2; Chan Decl. ¶ 3, ECF No. 14-1.) ICPEP is owned and managed solely by Danny Chan, a resident of Hamilton County, Indiana. (Compl. ¶ 2, ECF No. 1-2.) At all relevant times, ICPEP transacted business through Chan while he was physically present in Indiana. (Pl.'s Resp. ¶ 28, ECF No. 17; Chan Decl. ¶ 3, ECF No. 14-1.) ICPEP's business, in part, involves lending and participating in loans used to fund movie productions. (Compl. ¶ 1, ECF No. 1-2.) In addition to running ICPEP's business, Chan has been the CEO of Almost Never Films, Inc. ("ANF-Indiana") since its 2015 formation in Indiana. (Chan Decl. ¶ 8, ECF No. 14-1.) ANF-Indiana finances and produces movies. (*Id.* ¶ 9.)

Chan was introduced to the SMC defendants in July 2019 through an ANF-Indiana colleague. (*Id.* ¶¶ 9–10, ECF No. 14-1; Burlingham Decl. Ex. 1; ECF No. 28-1.)[2] SMC Specialty Finance, LLC is a California LLC owned and managed by California residents Gary S. Raskin[3] and Alastair Burlingham. (Compl. ¶¶ 3–6, ECF No. 1-2.) SMC LLC is a media finance company that, in relevant part, issues loans

---

[2] The Court may consider all submitted written materials. *See Purdue*, 338 F.3d at 782–83. Here the Court considers an exhibit submitted in support of Defendants' Motion for Reconsideration. (ECF No. 26.)

[3] Raskin is also an attorney and the Managing Partner of Raskin Gorham Anderson Law located in Los Angeles, California. (Raskin Decl. ¶ 2, ECF No. 8-1.) Chan alleges that Raskin represented both ICPEP and SMC on the parties' transactions, including two transactions at issue here. (Chan Decl. ¶ 22, ECF No. 14-1.) The Court notes that Raskin, as owner, manager, and attorney for SMC, may have had a conflict of interest that, if not waived, may have prevented him from representing ICPEP on SMC transactions. That being said, Raskin's apparent conflict of interest has no effect on the Court's personal jurisdiction analysis.

that are used to finance early movie production costs. (*Id.* ¶ 6.) SMC typically funds its loans by obtaining capital investments from third parties such as ICPEP. (*Id.* ¶ 6.) SMC LLC maintains that it does not do business in Indiana and neither Raskin nor Burlingham have ever visited Indiana. (Raskin Decl. ¶ 4, ECF No. 8-1; Burlingham Decl. ¶ 4, ECF No. 8-3.)

In November 2019, Chan emailed Burlingham to "talk about a partnership." (Burlingham Decl. Ex. 1; ECF No. 28-1.) A month later, Chan met the SMC defendants in person in Los Angeles, California, to discuss possible investments. (Chan Decl. ¶ 11, ECF No. 14-1.) Chan rejected an SMC opportunity presented during the meeting and rejected an additional SMC opportunity emailed to Chan in March 2020. (*Id.* ¶¶ 11–13.)

Chan and SMC's next contact was not until April 2021 when ICPEP first invested with SMC. (*Id.* ¶¶ 14–15.) This first investment was one of twenty-one SMC investments by either ICPEP, Chan, or ANF-Indiana through mid-2024. (*Id.* ¶¶ 16–17.) SMC's investment opportunities "all followed the same pattern," beginning with a call or email from SMC. (*Id.* ¶ 16.) Chan listened to SMC's pitch, reviewed emailed materials, and evaluated the opportunity. (*Id.* ¶ 16.) Over the course of the parties' relationship, they communicated by phone and email. (Pl.'s Resp. ¶ 24, ECF No. 17.) Between July 2019 and May 2024, Chan received over one thousand emails from SMC.[4] (Chan Decl. ¶ 21, ECF No. 14-1.) To move forward on an investment, Chan

---

[4] ICPEP acknowledges that some of these emails are duplicates. (Chan Decl. ¶ 21, ECF No. 14-1.)

5

would sign and return a funding agreement either individually or on behalf of ICPEP or ANF-Indiana.[5] (*Id.* ¶ 16.) Each funding agreement contained a California choice of law provision and an arbitration clause mandating arbitration by JAMS in Los Angeles County, California. (Defs.' Mot. to Dismiss or Compel Arbitration 4, ECF No. 9; *see also* Compl. ¶ 89.E.) To complete the investment, Chan wired funds to SMC. (Chan Decl. ¶ 16, ECF No. 14-1.)

Altogether, SMC presented over forty investment opportunities to ICPEP, Chan, and ANF-Indiana, who collectively invested over $9.3 million across twenty-one accepted opportunities. (Pl.'s Resp. ¶¶ 25–26, ECF No. 17.) SMC sent around $7 million across thirty-nine repayments and returns to ICPEP, Chan, or ANF-Indiana's Indiana bank accounts. (*Id.* ¶ 29.) ICPEP, however, alleges that SMC owes over $3.5 million in overdue repayments and interest. (*Id.* ¶ 29.) This outstanding balance is the basis for ICPEP's Complaint against SMC.

ICPEP filed the present action in Hamilton Superior Court on August 23, 2024. (ECF No. 1-2.) ICPEP's Complaint asserts accounts stated and fraud claims related to two unpaid investments. (Compl. Counts I–IV, ECF No. 1-2.) With respect to one of these investments, ICPEP alleges that SMC misrepresented ICPEP's repayment position and failed to timely repay the investment as promised. (*Id.* ¶ 16–17, 39.) Additionally, ICPEP's Complaint asserts an abuse of process claim related to SMC's recently-filed extortion, intentional infliction of emotional distress, and unfair

---

[5] Three loans, including two at issue here, allegedly lacked funding agreements, (Chan Decl. ¶ 16, ECF No. 14-1), but the negotiations otherwise seemingly followed the same general course of conduct, (*id.* ¶¶ 27–28, 33).

6

competition claims against Chan in California.[6]  (*Id.* ¶ 83.)  SMC timely removed to this Court on October 11, 2024.  (ECF No. 1.)  Now before the Court is SMC's motion to either (1) dismiss the Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, or (2) compel arbitration.  (Defs.' Mot. to Dismiss or Compel 1, ECF No. 9.)

## IV. Discussion

### A. Personal Jurisdiction

ICPEP alleges that SMC's "extensive contacts, solicitations, business, benefits, profits, and communications with the state and citizens of Indiana support[] specific personal jurisdiction."  (Pl.'s Resp. ¶ 1, ECF No. 17.)  Specifically, ICPEP relies heavily on the volume of investment opportunities "solicited" by SMC over a four-year period to argue that SMC targeted and purposefully availed itself of the privilege of doing business in Indiana.  (*Id.* ¶¶ 43–44, 50.)  Moreover, ICPEP alleges that personal jurisdiction exists even though no SMC defendant has ever set foot in Indiana.  (*Id.* ¶ 41.)  The Court agrees that the volume of contacts between SMC and ICPEP, through Chan, is substantial, and that SMC need not physically enter Indiana.  *See Felland*, 682 F.3d at 673 ("Jurisdiction cannot be avoided simply because a defendant did not physically enter the forum state.").

Yet, the only reason SMC has interacted with Indiana is because Chan lives here.  The funding agreements between ICPEP and SMC do not relate to Indiana, were not

---

[6] The extortion claim against Chan has been dismissed.  (Pl.'s Resp. ¶ 17, ECF No. 17.)

7

signed by SMC in Indiana, and select California as the governing jurisdiction. (*See, e.g.*, Raskin Decl. Ex. A); *Nalabotu v. Omnia Inv. Advisors LLC*, No. 1:23-cv-00985-JRS-TAB, 2023 WL 8522645, at *3 (S.D. Ind. Oct. 31, 2023). In other words, ICPEP, through Chan, has complete control over SMC's connection to Indiana. *Lakeside*, 597 F.2d at 603 ("[T]he courts of Wisconsin no more had jurisdiction over [the defendant] than would the courts of England or Taiwan if [the plaintiff] had chosen to have the goods manufactured in either of those places."). "[ICPEP] cannot be the only link between [SMC] and [Indiana]." *Walden*, 571 U.S. at 285. That Chan lives in Indiana does not establish a substantial connection between SMC and Indiana; this is precisely the kind of "random, fortuitous, or attenuated" contact that the Due Process Clause does not allow as the basis for personal jurisdiction. *Id.* at 286.

ICPEP argues that that *Estimating Group LLC v. Rickey Conradt, Inc.* is instructive and factually similar to the instant case. (Pl.'s Resp. ¶¶ 43–48, ECF No. 17.) In *Estimating Group*, the court concluded it had personal jurisdiction over the nonresident defendant for four reasons: "(1) [the defendants] started the business relationship; (2) the relationship continued uninterrupted for five years; (3) the [services performed] were all unique; and (4) [the plaintiff] completed the estimates in Indiana." No. 1:19-cv-00586-RLY-DLP, 2020 WL 6287679, at *3 (S.D. Ind. Feb. 18, 2020). ICPEP alleges all four reasons apply here, (Pl.'s Resp. ¶¶ 43–48, ECF No. 17), but the Court rejects each reason as follows.

First, though SMC sought out ICPEP for each investment opportunity, (*id.* ¶ 43), it was Chan who initiated the business relationship with SMC, (Burlingham Decl.

8

Ex. 1, ECF No. 28-1; Chan Decl. ¶ 9, ECF No. 14-1). Specifically, Chan emailed Burlingham in November 2019 to "talk about a partnership," and an in-person meeting in Los Angeles, California followed. (Burlingham Decl. Ex. 1, ECF No. 28-1; Chan Decl. ¶ 11, ECF No. 14-1.) Only since the in-person meeting in Los Angeles did SMC begin to solicit ICPEP, Chan, and ANF-Indiana for investments. (Chan Decl. ¶¶ 13–14, ECF No. 14-1.) Accordingly, the Court attributes the initiation of ICPEP's business relationship with SMC to Chan. *See Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 494 (7th Cir. 2014) (affirming a finding of no personal jurisdiction where there was "no indication that [the defendant] initiated th[e] business relationship" with the plaintiff).

Second, ICPEP and SMC did not have the same "continued" and "uninterrupted" relationship at issue in *Estimating Group*. There, the plaintiff worked *extensively* for the defendant during a continuous, five-year period. *Estimating Grp.*, 2020 WL 6287679, at *3 ("In 2018 alone, the [plaintiff] averaged 100 hours per week on [defendant's] estimates and spent between ten and twenty-four hours a week for ten months responding to their communications."). Not so here. Since 2020, SMC offered over forty investment opportunities to Chan with around a 50% acceptance rate. (Pl.'s Resp. ¶ 25, ECF No. 17; Pl.'s Resp. Ex. L, ECF No. 14-2.)[7] The vast majority of these opportunities were offered to Chan between 2021 and 2022—only six

---

[7] The Court notes that each opportunity was directed generally to Chan, who unilaterally chose whether to act on behalf of himself individually, ICPEP, or ANF-Indiana. The Court attributes all SMC investment opportunities as directed to ICPEP for the purposes of this analysis. *See Purdue*, 338 F.3d at 780.

9

opportunities have been offered since. (Pl.'s Resp. Ex. L, ECF No. 14-2; Chan Decl. ¶ 20, ECF No. 14-1.) And in 2023, ICPEP invested with SMC only once. (Pl.'s Resp. Ex. L, ECF No. 14-2.) ICPEP's business relationship with SMC, therefore, was not continuous and uninterrupted. *Cf. Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 281 (7th Cir. 1990) (finding personal jurisdiction over nonresident defendant that continually used plaintiff's services for over a year); *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 763 (7th Cir. 2008) (finding personal jurisdiction where contract created "continuing obligations" between the parties).

Third, ICPEP argues that each investment opportunity was "unique." (Pl.'s Resp. ¶ 45, ECF No. 17.) While technically true, the court in *Estimating Group* considered "uniqueness" in terms of the parties' course of conduct: "*Sometimes a text message provided enough information for [the plaintiff] to prepare an estimate*; however, others required her to follow up with a phone call or a telephonic conference." 2020 WL 6287679, at *3 (emphasis added). Again, not so here. ICPEP alleged that the SMC investments "all followed the same pattern."[8] (Chan Decl. ¶ 16, ECF No. 14-1.) Accordingly, though each loan may have been unique, ICPEP and SMC's course of conduct was not.

Fourth, ICPEP argues that, like the *Estimating Group* plaintiff, Chan performed ICPEP's work for SMC while physically present in Indiana. (Pl.'s Resp. ¶ 46, ECF No. 17.) ICPEP further asserts that "the inquiry is not where the contract *could have*

---

[8] The Court again notes that three loans did not involve signed funding agreements, but these loans otherwise followed the same course of conduct. (Chan Decl. ¶¶ 27–28, 33, ECF No. 14-1.)

10

been performed; it is where the contract was *actually* performed." (*Id.*) (quoting *Estimating Grp.*, 2020 WL 6287679, at *3.) However, the contract at issue in *Estimating Group* was for the plaintiff's services. 2020 WL 6287679, at *3. Here, on the other hand, ICPEP performed its obligations by wiring money to SMC. Accordingly, the Court distinguishes ICPEP's performance from that at issue in *Estimating Group*. *See Citadel*, 536 F.3d at 763 (noting a difference between a contract for a discrete task and a contract to provide a service). That ICPEP wired money to SMC from Indiana, and vice versa, fails to establish a sufficient connection between SMC and Indiana. *Lakeside*, 597 F.2d at 603 (concluding that placing an order to a resident plaintiff is not "purposeful avail[ment]"); *see also Asset Allocation & Mgmt. Co. v. W. Emps. Ins., Co.*, 892 F.2d 566, 570 (7th Cir. 1989) (concluding that Illinois long-arm statute did not authorize personal jurisdiction where "[defendant's] dealings in Illinois were limited to paying and complaining").

Additionally, the Court disagrees with ICPEP's assertion that personal jurisdiction exists because SMC-funded movies entered Indiana through the stream of commerce. (Pl.'s Resp. ¶ 51, ECF No. 17.) ICPEP asserts that the "stream of commerce theory remains viable in the Seventh Circuit," (*id.*), but fails to acknowledge the theory's limited application outside the products liability context, *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 576 (7th Cir. 2020) ("[The plaintiff] fails to acknowledge that there is a reason why the stream of commerce theory is typically associated only with products liability suits."). The

11

Court declines to apply the doctrine here, but in any event, ICPEP fails to allege that SMC delivered movies into the stream of commerce. *Id.* at 575.

Finally, ICPEP seemingly argues that the Court has personal jurisdiction over Raskin and Burlingham because the two are shareholders of an Indiana corporation. (Pl.'s Resp. ¶¶ 32, 42, ECF No. 17.)  The Court is unpersuaded by this argument because ICPEP, asserting only specific personal jurisdiction here, failed to allege how the corporation's business dealings relate in any way to this litigation. *Purdue*, 338 F.3d at 780.

In conclusion, ICPEP has failed to demonstrate a *prima facie* case of personal jurisdiction over SMC. *Id.* at 782.  Specifically, the Court finds that SMC's only link to Indiana is through its communications and dealings with Chan—SMC's conduct was neither directed toward nor related to Indiana in any other way. *Felland*, 682 F.3d at 674.  Chan's unilateral choice to reside in Indiana cannot confer specific jurisdiction over nonresident SMC. *Lakeside*, 597 F.2d at 603; *see also Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").  Therefore, the Court lacks personal jurisdiction over SMC.

    B. <u>Transfer</u>

Next, the Court must consider whether transfer is appropriate under 28 U.S.C. § 1631 as opposed to dismissal. *North v. Ubiquity, Inc.*, 72 F.4th 221, 229 (7th Cir. 2023) ("[W]hen federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case—even if neither party requests transfer.").  Transfer is warranted "if it is in the interest of

justice." 28 U.S.C. § 1631.  Generally, "[i]f a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer." *North*, 72 F.4th at 228 (quoting *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3rd Cir. 2020)).  If, on the other hand, a plaintiff's claim would be time-barred, a compelling reason for transfer exists.  *Id.* (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)).  That said, "the term 'interests of justice' is vague," and "district courts have a good deal of discretion in deciding whether to transfer a case." *Phillips*, 173 F. 3d at 610.

Here, the Court concludes that the interests of justice demand transfer because at least one of ICPEP's claims may be time-barred.  For example, ICPEP's claim under the Indiana Crime Victims Relief Act ("CVRA") is subject to a two-year statute of limitations that begins to run when ICPEP knew or should have known of its injury. *Robertson v. State*, 141 N.E.3d 1224, 1229 (Ind. 2020).  On this record, the Court cannot conclude with certainty when ICPEP's CVRA claim began to run, or whether any tolling is applicable; however, ICPEP likely knew of its injury nearly two years ago in September 2023.  (Chan Decl. ¶ 29, ECF No. 14-1.)  Therefore, the Court finds that transfer to the Central District of California is in the interest of justice in order to avoid a dismissal due to the running of the statute of limitations.  *See Robertson*, 141 N.E.3d at 1229.  Additionally, the interest of justice is served because personal jurisdiction over SMC is likely incontestable in the Central District of California.  *See Worldwide Fin. LLP v. Kopko*, No. 1:03-cv-0428-DFH, 2004 WL 771219, at *4 (S.D. Ind. Mar. 18, 2004) (Hamilton, J.) ("Transfer to Illinois, where jurisdiction cannot be

13

questioned, eliminates the [personal jurisdiction] issue and would be in the interest of justice.").

## V.   Conclusion

For the reasons stated above, the Court lacks personal jurisdiction over SMC. Accordingly, the Court **transfers** this case to the Central District of California under 28 U.S.C. § 1631 and **denies** SMC's Motion to Dismiss or Compel Arbitration, (ECF No. 8). The Court's ruling is without prejudice to the renewal of SMC's motion to compel arbitration in the Central District of California (Western District). The Clerk **shall** take all administrative steps necessary to **effectuate the transfer**.

**SO ORDERED.**

Date: 9/23/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana


Distribution by CM/ECF:

David J. Tipton
BLEEKER BRODEY & ANDREWS
dtipton@bbanda.com

Andrew F. Marquis
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
amarquis@scopelitis.com

14